HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SHAWNA STORMS,

    Plaintiff,

    v.

FLAGSTAR BANK, FSB, AND DOE DEFENDANTS 1-20,

    Defendants.

Case No. 2:22-cv-00650-RAJ

ORDER

## I. INTRODUCTION

This matter comes before the Court on Defendant Flagstar Bank's ("Defendant" or "Flagstar") Motion for Summary Judgment. Dkt. # 13. Plaintiff Shawna Storms ("Plaintiff" or "Ms. Storms") opposes the motion. Dkt. # 16. Having reviewed the briefing, remaining record, and applicable law, the Court **GRANTS** Plaintiff's motion, Dkt. # 13, and dismisses with prejudice all of Plaintiff Storms's claims.

## II. BACKGROUND

This case concerns property owned by Ms. Storms located in Arlington, Snohomish County, Washington ("the Property"). Dkt. # 1 (Compl.) ¶ 1.2. Ms. Storms and her former husband, Jon Storms, originally purchased the property in 2005. *Id.* ¶ 2.1. In 2008, the couple signed a Promissory Note and Deed of Trust payable to Flagstar in connection with the loan taken out for the purchase of the Property. *Id.* ¶ 2.1; *see also* Dkt. # 14, Declaration of Clellan Kane ISO Flagstar's Motion for Summary Judgment

ORDER – 1

("Kane Decl."), Ex. 1 (Note and Deed of Trust). After the Storms divorced in 2014, Plaintiff retained possession of the Property and took over the mortgage payments. *Id.*

### a.) 2016 Loan Modification

In 2015, Ms. Storms experienced financial hardship due to medical bills, her divorce, and filing for Chapter 13 bankruptcy. Dkt. # 1 ¶ 2.2. She got behind on her mortgage payments and applied for a loan modification with Flagstar. *Id.* ¶¶ 2.2, 2.3. On or about January 15, 2016, Flagstar told Ms. Storms that she was approved for a "Federal National Mortgage Association Standing Modification," which they called a "Trial Period Plan." Kane Decl., Ex. 3. The 2016 Trial Period Plan provided that Ms. Storms's loan would be modified and her accrued late charges waived if she satisfied the requirements of the Plan and executed and returned a copy of the Loan Modification Agreement. *Id.* Additionally, the 2016 Trial Period Plan called for Ms. Storms to make three payments of $1,830.66 each on February 1, March 1, and April 1, 2016. *Id.* Ms. Storms signed the 2016 Trial Period Plan on January 29, 2016. *Id.*

On or about December 13, 2016, Ms. Storms signed a Loan Modification Agreement ("2016 Loan Modification") with Ms. Storms listed as the "Borrower" and "Matrix Financial Services Corporation, by Loancare LLC, as Agent under Limited POA" as the "Lender." Dkt. # 17, Declaration of Shawna Storms ISO Response to MSJ ("Storms Decl."), Ex. 1 (2016 Loan Modification Agreement); *see also* Kane Decl., Ex. 2. It provided that the amount payable under the Note and the Security Instrument (called the "Unpaid Principal Balance") was $325,556.70, "consisting of the unpaid amounts(s) loaned to Borrower by Lender plus any interest and other amounts capitalized." Storms Decl., Ex. 2 at pp. 2. The Agreement required Ms. Storms to make monthly payments of principal and interest of $1,285.70 beginning November 1, 2016 and provided for a yearly interest rate of 3.625%. *Id.* Unfortunately, Ms. Storms was unable to keep up with the monthly payments due to her ongoing financial difficulties, and she eventually defaulted on the loan. *Id.* ¶ 5.

ORDER – 2

**b.) 2019 Loan Modification**

In 2019, Ms. Storms sought another loan modification in an attempt to save the Property from foreclosure. *Id.* ¶ 7. Flagstar advised Ms. Storms in writing that she had been approved for a "Flex Modification Plan" (the "2019 Trial Plan") under the guidelines of the Federal National Mortgage Association. Storms Decl., Ex. 2; *see also* Kane Decl., Ex. 4. Flagstar indicated that the Trial Plan would help it "to determine whether a modification is an acceptable long-term solution to [Storms'] delinquency." *Id.* The Plan required that Ms. Storms make three payments of $1,672.33 on June 1, July 1, and August 1, 2019. Kane Decl., Ex. 4. After successful completion of the Trial Plan, Ms. Storms was to continue making payments in the same amount on the first of the month until she received confirmation that her loan was "permanently modified." *Id.* The 2019 Trial Plan provided a comparison between Ms. Storms' current terms and the modification terms, as follows:

|  | **Current Terms** | **Modification Terms** |
|---|---|---|
| **Payment** | $1,781.96 | $1,672.33 |
| **Interest Rate** | 3.625% | 3.625% |
| **Term** | 40 years | 40 years |
| **Maturity Date** | 10/01/2056 | 08/01/2059 |
| **Deferred Principal** | $0.00 | $73,749.81 |

*Id.* On or about April 28, 2019, Ms. Storms signed and dated the 2019 Trial Plan. *Id.* Her signature appears directly under the table comparing her current mortgage terms to the estimated modified terms. *Id.*[1]

---

[1] The 2019 Trial Plan documents submitted by the parties are not identical. The version submitted by Plaintiff as both Exhibit # 2 and # 3 to the Storms Declaration does not include the

ORDER – 3

After making the required monthly payments under the 2019 Trial Plan, Ms. Storms then became eligible for a permanent loan modification. Storms Decl. ¶ 9. After reviewing the paperwork sent to her by Flagstar, Ms. Storms signed the loan modification documents, which included a Loan Modification Agreement, Notice of No Oral Agreements, Correction Agreement, and Attorney Selection Agreement, on August 24, 2019. Storms Decl., Ex. 4; *see also* Kane Decl., Ex. 5. Flagstar's representative, Matrix Financial Services, executed the Agreement on September 7, 2019. Storms Decl., Ex. 5; Kane Decl., Ex. 5.

The Loan Modification Agreement states, in language nearly identical to that included in the 2016 Loan Modification Agreement, "1. As of September 1st, 2019, the amount payable under the Note and the Security Instrument (the 'Unpaid Principal Balance') is U.S. $292,000.00, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized." Storms Decl., Ex. 4; *see also* Kane Decl., Ex. 5. Further, the Agreement provided for an interest rate of 3.625% and monthly payments of principal and interest of $1,153.18. *Id.* Thereafter, Ms. Storms made timely monthly payments from September 2019 to October 2020. Storms Decl., ¶ 13-14. It was around this time that Ms. Storms applied for new financing through two different lenders and— for the first time—reviewed her paper mortgage statements that itemized her deferred principal balance of $71,073.41. *Id.*

**c.) Communications with Flagstar**

Ms. Storms contacted Flagstar on October 2, 2020, pointed out that the deferred balance was not listed on the 2019 Loan Modification Agreement, and asked that it be

---

monthly payment requirements or the chart comparing Ms. Storms's current loan terms with her modification terms. Instead, Plaintiff's Exhibits include only a "Frequently Asked Questions" section. Flagstar's Exhibit # 4, which also purports to be the 2019 Trial Plan, is a 16-page document that includes both the payment terms of the trial plan and the comparison between Ms. Storms' current loan terms and modified terms, in addition to the "Frequently Asked Questions" section. Additionally, Flagstar's Exhibit includes, at pp. 8, a signature page bearing Ms. Storms's name and what appears to be her signature. Kane Decl., Ex. 4 at pp. 8.

ORDER – 4

corrected. *Id.* ¶ 15. Ms. Storms indicates that she called Flagstar at least 13 times that month as she sought to have the deferred principal balance removed from her mortgage statement. *Id.*

On October 30, 2020, Ms. Storms sent a "notice of error" letter to Flagstar regarding the terms of her loan modification. Storms Decl., Ex. 5. In the letter, she asserted that her loan was for $292,000 and that the documentation does not mention a second principal loan, a deferred principle, a forbearance, or any other amount beyond the $292,000 stated. *Id.* Ms. Storms explained that she was unable to refinance her loan to a lower rate and was required to pay private mortgage insurance due to the existence of the deferred principal. *Id.* Finally, she requested that Flagstar "fix" the principal amount or provide her with documentation of her signature and approval of the deferred principal. *Id.* If Flagstar was unable to produce the requested documents, Ms. Storms asked that Flagstar: 1) correct her principal; 2) refund her payments for private mortgage insurance; and 3) re-evaluate the distribution of her payments towards her principal and interest. *Id.*

Flagstar acknowledged receipt of Ms. Storms's correspondence on November 10, 2020 in a letter of the same date. Kane Decl., Ex. 10. Flagstar followed up with a letter dated November 19, 2020 in which the bank stated that they found no error in the processing of Ms. Storms's loan modification. Kane Decl., Ex. 8; *see also* Storms Decl., Ex. 7. Flagstar wrote, "Our records indicate a Trial Plan Agreement was mailed on April 19, 2019 in which it outlines the $73,749.81 in modification term [sic] for the past due balance." *Id.* at pp. 1. Additionally, Flagstar enclosed a copy of the executed 2019 Trial Plan. *Id.*

On January 7, 2021, attorney Peter Fredman, acting on behalf of Ms. Storms, sent a Notice of Error, Qualified Written Request, and Request for Information to Flagstar. Storms Decl., ¶ 24; Kane Decl., Ex. 11. Flagstar acknowledged receipt of the letter on January 14, Kane Decl., Ex. 11 at pp.1, and provided a more in-depth response to

ORDER – 5

Plaintiff's correspondence on February 3. Kane Decl., Ex. 9. Ultimately, Flagstar maintained that there was no error in processing Plaintiff's loan modification because her Trial Payment Plan, which included the outstanding deferred principal balance, outlined the terms of the modification. *Id.* Flagstar included a breakdown of the deferred principal balance and attached 71 pages of documents that were used to support Defendant's determination that there was no error in Ms. Storms's balance. *Id.*

Ms. Storms filed the instant lawsuit in March 2022 in Snohomish County, Washington, asserting that Flagstar violated the Washington Consumer Protection Act, RCW 19.86 *et seq*, and the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605. Dkt. # 1-1. Defendant Flagstar removed the case to federal court on the basis of this court's diversity jurisdiction. Dkt. # 1. In March 2023, Flagstar moved for summary judgment as to all claims. Dkt. # 13.

### III.  LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325. If the moving party meets the initial burden, the opposing party must set forth specific facts showing that there is a genuine issue of fact for trial to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The court must view the evidence in the light most favorable to the nonmoving

ORDER – 6

party and draw all reasonable inferences in that party's favor. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150-51 (2000). The nonmoving party must, however, present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). Uncorroborated allegations and "self-serving testimony" will not create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002); *T.W. Elec. Serv. v. Pac Elec. Contractors Ass'n*, 809 F. 2d 626, 630 (9th Cir. 1987).

## IV.   DISCUSSION

**A. Real Estate Settlement Procedures Act Claim**

Plaintiff's second cause of action asserts that Flagstar violated RESPA by failing to properly investigate and timely respond to her questions about her loan modification and her two Notice of Error letters. Dkt. # 1, ¶¶ 3.7-3.13; Dkt. # 16 at 14-15. Instead, Plaintiff argues, Flagstar doubled down on their error and incorrectly asserted that the 2019 Loan Modification contained terms that required her to pay the deferred loan balance. *Id.* Additionally, Plaintiff argues that Flagstar violated 12 C.F.R. § 1024.35(b)(11) and similar regulations when it failed to correct her account or conduct a reasonable investigation, provide an accurate payoff balance[2], and give an explanation as to why Ms. Storms owes the deferred loan balance.[3] *Id.* at 16.

Flagstar counters that Flagstar's investigation and response to Plaintiff's inquiries were reasonable and that even if Plaintiff could establish a RESPA violation, Plaintiff has

---

[2] Plaintiff does not show, and the court cannot find, an instance of Plaintiff requesting a statement of her payoff balance pursuant to 12 C.F.R. 1026.36(c)(3).

[3] Plaintiff, in her Response, argues that Flagstar violated its duty of good faith and fair dealing in their interactions with her. This, Plaintiff argues, should factor into this court's analysis of her RESPA claim. Dkt. # 16 at 17. However, Plaintiff concedes that she did not plead a claim for breach of good faith and fair dealing in the complaint. *Id.* Defendant has not been provided fair notice of this claim, and therefore the court will not consider this argument. *See Lewis v. Bell*, 45 Wn. App. 192, 197 (1986) ("A pleading is insufficient when it does not give the opposing party fair notice of what the claim is and the ground upon which it rests.")

ORDER – 7

no admissible evidence that she has suffered damages. Dkt. # 13 21-25.

RESPA requires loan servicers to reply to borrower inquiries and imposes a duty to provide borrowers with a written explanation or clarification in response to qualified written requests ("QWR"). 12 U.S.C. § 2605(e). A QWR is "written correspondence" from a borrower that includes: 1) the name and account of the borrower (or information allowing the servicer to identify the account); and 2) a statement as to why the borrower believes that the account is in error or provides sufficient detail concerning other information sought by the borrower. *Id*. § 2605(e)(1)(B). Servicers must provide a written response acknowledging receipt of the QWR within 5 days, excluding legal public holidays, Saturdays, and Sundays. *Id.* § 2605(e)(1)(A). Within 30 days of receipt of the QWR, the servicer must: 1) must make any appropriate corrections to the borrower's account and notify the borrower in writing, *id.* § 2605(e)(2)(A); 2) after conducting an investigation, provide a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer, *id.* § 2605(e)(2)(B)(i); 3) after conducting an investigation, provide the borrower with a written explanation or clarification with the information requested by the borrower, *id* § 2605(e)(2)(C)(i); or 4) after conducting an investigation, provide an explanation as to why the information requested by the borrower is unavailable or cannot be obtained by the servicer, *id.* Additionally, the servicer must provide the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower. 12 U.S.C. § 2605(e)(2(A)-(B).

*1.) Timeliness of Flagstar's Responses Under RESPA*

Both parties agree that Plaintiff's October 30, 2020 and January 7, 2021 letters constitute QWRs. *See* Dkt. # 13 at 21-22; Dkt. # 16 at 14-15. First, as to the timeliness of Flagstar's responses, the Court finds no violation. Flagstar acknowledged receipt of Plaintiff's October 30, 2020 QWR on November 10, 2020—the same date on which Flagstar date-stamped it, Kane Decl., Ex. 7, and within the time period proscribed by 12

ORDER – 8

U.S.C. § (e)(1)(A). Kane Decl., Ex. 10. Flagstar then followed up with a substantive response with a letter dated November 19, 2020—well within the 30 days required by U.S.C. § 2605(e)(2). *Id.*, Ex. 8.

The same is true of Flagstar's response to Plaintiff's January 7, 2021 QWR. The letter sent on Plaintiff's behalf from Mr. Fredman to Flagstar was date-stamped by Flagstar on January 14, 2021. *Id.*, Ex. 11. On that same date, Flagstar sent a letter to Plaintiff acknowledging receipt of the correspondence. *Id.* Flagstar then provided a substantive response in a letter dated February 3, 2021. *Id.*, Ex. 9. Based on the dates of the correspondence between the parties, the court finds that Flagstar's responses to Plaintiff's QWRs were timely under RESPA.

*2.) Flagstar's Substantive Responses to Plaintiff's QWRs*

Plaintiff contends that Flagstar's responses to her QWRs fall short of the standards set by RESPA. Specifically, Plaintiff alleges that Flagstar failed to properly investigate the discrepancies raised in the QWRs and lied by asserting that the plain language of the 2019 Loan Modification required her to make payments towards the deferred principal. Dkt. # 1 ¶ 3.8-3.9. The crux of Plaintiff's argument is that she was not required to pay the deferred principal balance, and Flagstar violated RESPA when they disagreed.

The Court finds no defect in the substance of Flagstar's correspondence. In response to Plaintiff's October 2020 QWR, Flagstar wrote, "We researched the error you reported and can confirm that there was no error in the processing of the Loan Modification. Our records indicate a Trial Plan Agreement was mailed on April 19, 2019 in which it outlines the $73,749.81 in modification term [sic] for the past due balance." Kane Decl., Ex. 8. Additionally, Flagstar attached a copy of the executed 2019 Trial Plan, which states that Ms. Storms's loan modification terms would include a deferred principal of $73,749.81. *Id.* at pp 4. Plaintiff's January 2021 QWR delved into more detail as to why Ms. Storms believed that Flagstar incorrectly and improperly calculated her loan balance, and Flagstar's response was similarly in-depth. In its February 3, 2021

ORDER – 9

letter Flagstar provided a breakdown of the capitalized amount of $39.960.42 (the majority of which was interest) and gave the following explanation for the disputed deferred principal balance:

> The loan was not able to be placed in an affordable payment program under FNMA [Federal National Mortgage Association] guidelines, based on the principal balance of $323,112.99 plus the capitalized amount of $39,960.42 totaling $363,073.41. Loss Mitigation reduced the amortizing Unpaid Principal Balance to $292,000.00 leaving the 2nd Outstanding Principal (zero interest bearing) of $71,073.41."

Kane Decl., Ex. 9 at pp.1. Additionally, Flagstar sent to Plaintiff copies of the Life of Loan Payment History, Detail Transaction Code, Mortgage Statements pre-modification, Mortgage Statement pre-modification, and Loss Mitigation Approval Letter. *Id.*

Although Plaintiff's claims are framed as a RESPA violation on the part of Flagstar, ultimately, Plaintiff's true concern is that Flagstar misrepresented the terms of the 2019 Loan Modification. Here, Plaintiff fails to show that Flagstar's responses to her QWRs were deficient under RESPA or that Flagstar failed to investigate her QWRs. Flagstar provided "a statement of the reasons for which the servicer believes the account of the borrower is correct *as determined by the servicer*," as required by 12 U.S.C. § 2605 (e)(2)(B)(i) (emphasis added). Plaintiff's disagreement with the servicer's determination does not create a claim under RESPA.

And in any event, Plaintiff fails to show that Flagstar misrepresented the terms of the Loan Modification Agreement. The Agreement, signed by both parties, states, "1. As of September 1, 2019, the amount payable under the Note and the Security Instrument (the 'Unpaid Principal Balance') is U.S. $292,000.00, consisting of amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized." Kane Decl., Ex. 5 at pp. 2. According to Flagstar, the "other amounts capitalized" refers to the deferred principal of $71,073.41. Dkt. # 13 at 8. The 2019 Trial Plan (signed by Ms. Storms) and

ORDER – 10

the 2019 Loan Modification Agreement back this up, and Ms. Storms does not provide an alternative interpretation or explanation for this reference to "other amounts capitalized" in the Agreement. Indeed, the deferred principal was itemized on each of Plaintiff's billing statements starting in October 2019. Kane Decl., Ex. 6 (Storms Mortgage Statements). Ms. Storms simply failed to review her monthly itemized billing statements for a year. *See* Declaration of Nicholas A. Reynolds in Support of Defendant's Motion for Summary Judgment ("Reynolds Decl."), Ex. 1 at 64:5-13 ("I can definitely say that until I reviewed [the statements] when it was pointed out to me in October 2020, I did not know [the deferred principal balance] was on there. But I now know that it is on all of them."). Plaintiff's signature on the 2019 Trial Plan, directly below the chart explaining the terms of the loan modification and the amount of the deferred principal, show that Plaintiff was aware, or should have been aware, of the existence of the deferred principal balance. Kane Decl., Ex. 4 at pp. 8.

Additionally, Plaintiff concedes that she understood that capitalized amounts were added to her loan balance, and she accepted the terms of the 2019 Loan Modification, which included the addition of $39,960.42 (comprised of interest, escrow payments, attorney fees, and inspection costs) because "it was a condition of obtaining the [modification]" and therefore, she "didn't complain." Storms Decl. ¶ 26. And Plaintiff continued to comply with the Loan Modification and made timely monthly payments from September 2019 to October 2020. Dkt. # 1 ¶ 2.11. Notably, what Plaintiff describes as an "accurate copy" of the 2019 Trial Plan submitted attached to Plaintiff's Declaration does not include any pages displaying her signature or the table comparing her then-current mortgage terms with the modified terms. *See* Storms Decl. ¶ 7, Ex. 2. However, the copy of the 2019 Trial Plan submitted by Flagstar, Kane Decl., Ex. 4, and Plaintiff's own deposition testimony[4] confirm that Ms. Storms read the 2019 Trial Plan, fully

---

[4] Reynolds Decl., Ex. 1 at 49:19-50:25. ("Q: Did you read and fully understand this document [the 2019 Trial Plan] before signing it? A: "Yes. I understood this to be a trial and that

ORDER – 11

understood its terms, and signed it, in addition to the terms set forth in the 2019 Loan Modification Agreement.

*3.) Damages*

Plaintiff has failed to demonstrate that she suffered actual damages due to Flagstar's alleged RESPA violations. RESPA provides for the collection of "actual damages to the borrower as a result of the failure" on the part of a servicer, and "any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of [the law], in an amount not to exceed $2,000." 12 U.S.C. § 2605(f)(1)(A)-(B). Although Plaintiff testified that the situation has been stressful for her, she has produced no evidence that she has sought medical care or incurred any costs associated with dealing with that stress. Reynolds Decl., Ex. 1 at 102:6-103:5. Plaintiff testified that no lender has denied a loan application based on her 2019 Loan Modification. *Id.*, Ex. 1 at 92:3-5; *see also Lal v. American Home Servicing, Inc.*, 680 F. Supp. 2d 1218, 1223 (E.D. Cal. 2010) ("Under RESPA, a borrower may not recover actual damages for nonpecuniary losses."). Additionally, Plaintiff has not established a pattern or practice of noncompliance with RESPA on the part of Flagstar, foreclosing damages under § 2605(f)(1)(B).

Flagstar has met is initial burden of showing the lack of evidence supporting Plaintiff's RESPA claim, and Plaintiff has failed to set forth specific facts showing that there is a genuine issue of fact for trial. The Court concludes, therefore, that Defendant Flagstar is entitled to summary judgment as to Plaintiff's RESPA claim.

**B. Washington Consumer Protection Act Claim**

Plaintiff alleges a violation of the Washington Consumer Protection Act ("CPA"), RCW 19.86. Dkt. # 1-1. To prevail on a CPA claim, Ms. Storms must establish the following elements: (1) an unfair or deceptive act or practice, (2) in trade or commerce,

---

if I proved myself with these three payments then they would finalize the loan and send me the documents to notarize.")

ORDER – 12

1  (3) which affects the public interest, and (4) injury to plaintiff's "business or property,"
2  (5) proximately caused by the unfair or deceptive act or practice. *Hangman Ridge*
3  *Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 784-85. (1986).

Defendant moves for summary judgment as to this claim, and it is therefore their burden to demonstrate an absence of evidence to support one or more elements of Plaintiff's claim. *Celotex Corp.*, 477 U.S. at 325. Defendant has met that burden. Plaintiff simply presents no evidence to support several elements of a CPA claim; namely, that Flagstar engaged in an unfair or deceptive practice, that Ms. Storms suffered an injury to her business or property that was proximately caused by the alleged unfair and deceptive act, or that there exists a public interest impact. Because each of these components is required to establish a CPA claim, Plaintiff's failure on only one is fatal to her claim[5]. *Hangman*, 105 Wn.2d at 793.

       *1.) Unfair or deceptive practice*

Plaintiff alleges that Flagstar engaged in unfair and deceptive practices when it "demanded monies from [Ms. Storms] allegedly under the terms of the permanent loan modification… when there is nothing in the documentation [contains] one single reference to a deferred balance." Dkt. # 13 at 12. In other words, Plaintiff alleges that Flagstar engaged in unfair and deceptive practices when it charged her payments related to the deferred principal listed in her 2019 Trial Plan.

Whether an action constitutes an unfair or deceptive practice is a question of law. *Bain v. Metropolitan Mortgage Group, Inc.*, 175 Wn.2d 83, 116 (2012) (citation omitted). The first two elements of a CPA claim may be established if a party can show that an act which has a capacity to deceive a substantial portion of the public has occurred in the conduct of any trade or commerce. *Hangman Ridge*, 105 Wn.2d at 785-86. Alternatively, these elements may be established with a showing that the act or practice constitutes a per se unfair trade practice. *Id*. "A per se unfair trade practice exists when a

---

[5] It is not disputed that the events at issue in this case occurred in trade or commerce.

ORDER – 13

statute which has been declared by the Legislature to constitute an unfair or deceptive act in trade or commerce has been violated." *Id.* Intent is not required to prove that an act is deceptive; the conduct must only have the *capacity* to deceive a substantial portion of the public. *Hangman Ridge*, 105 Wn.2d at 785. Even accurate communication may be deceptive if it contains a representation, omission, or practice that is likely to mislead. *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 50 (2009).

Here, Plaintiff fails to allege either that Flagstar engaged in conduct that is a per se unfair trade practice, or that Flagstar engaged in conduct that has the capacity to deceive a substantial portion of the public. Plaintiff's allegations center around her disagreement with Flagstar's calculation of her deferred principal and her attempts to get Flagstar to "correct" its records to reflect *Ms. Storms's* understanding of her mortgage balance. Dkt. # 16 at 12. As this court has discussed, *see supra* Section IV.A.2, Plaintiff's assertion that Flagstar incorrectly and dishonestly added a deferred principal balance to her loan modification is belied by 2019 Trial Plan, the 2019 Loan Modification Agreement, and Plaintiff's own testimony. Plaintiff has not established that Flagstar engaged in unfair and deceptive practices with regard to the 2019 Loan Modification or the QWR correspondence.

    *2.) Injury and Causation*

The CPA requires a private plaintiff to establish injury. *Panag*, 166 Wn.2d at 57. A "loss of use of property which is causally related to an unfair or deceptive act or practice" constitutes an injury under the CPA. *Mason v. Mortg. Am., Inc.*, 792 P.2d 142, 148 (Wash. 1990) (*en banc*). "Personal injuries, as opposed to injuries to business or property, are not compensable and do not satisfy the injury requirement. Thus, damages for mental distress, embarrassment, and inconvenience are not recoverable under the CPA." *Panag*, 166 Wn.2d at 57. Injury can be established, however, "if the consumer's property interest or money is diminished because of the unlawful conduct even if the expenses caused by the statutory violation are minimal." *Mason*, 792 P.2d at 148.

ORDER – 14

Here, Plaintiff has failed to establish an injury and a causal link to the either the 2019 Loan Modification or Flagstar's responses to her QWRs. While Plaintiff asserts that she has been "deprived of an opportunity to refinance her home loan and potentially reduce her interest rate," as well as "access some of her equity," Plaintiff testified that she has not had any applications rejected by a lender for a further modification. Reynolds Decl., Ex. 1 at 92:3-8. Also, Plaintiff fails to establish a causal link between Plaintiff's out of pocket expenses related to her QWRs (which revealed no miscalculation of her mortgage balance and resulted in no violations of RESPA) and the 2019 Loan Modification that Plaintiff challenges. Finally, because Plaintiff cannot seek emotional distress damages under the CPA, Plaintiff's claim necessarily fails. *Wash. State Physicians Ins. Exch. & Ass'n v. Fisions Corp.*, 122 Wn.2d 299, 317-318 (1993) ("Personal injuries are not compensable damages under the CPA.").

### 3.) Public Interest Impact

"A private plaintiff must show that his lawsuit would serve the public interest." *Michael v. Mosquera-Lacy*, 165 Wn.2d 595, 605 (2009). When faced with a private dispute, the court must examine four factors: (1) whether the alleged acts were committed in the course of defendant's business, (2) whether the defendant advertised to the public in general, (3) whether defendant actively solicited this particular plaintiff, indicating potential solicitation of others, and (4) whether the plaintiff and defendant have unequal bargaining positions. *Id.* No particular factor is dispositive, and not all factors need be present to establish public interest impact. *National Products, Inc. v. Gamber-Johnson, LLC*, 699 F. Supp. 2d 1232, 1242 (W.D. Wash. 2010).

Here, Plaintiff argues that the public interest element is met because Flagstar has the capacity to do to others what she alleges they did to her. However, the court is not persuaded. Examining the factors, it is clear that the parties' dispute occurred in the course of Flagstar's business. However, Plaintiff presents no evidence that the events at issue—the 2019 Loan Modification or Plaintiff's subsequent QWR correspondence—

ORDER – 15

occurred in the course of solicitation or were shared or advertised to the public. And although the parties—a private individual and a mortgage lender—occupy unequal bargaining positions, Plaintiff testified that she read and understood the loan modification documents presented to her. Reynolds Decl., Ex. 1 at 49:19-50:25. Generally, "a breach of a private contract affecting no one but the parties to the contract is not an act or practice affecting the public interest." *Hangman Ridge*, 105 Wn.2d at 790. Therefore, the court finds that the events at issue are private in nature, and that Plaintiff has not established the public interest element of her CPA claim. Accordingly, Flagstar is entitled to summary judgment regarding Plaintiff's CPA claim.

## V. CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant's motion for summary judgment, Dkt. # 13, and **DISMISSES** with prejudice all of Plaintiff's claims.

DATED this 30th day of May, 2023.

*[signature: Richard A. Jones]*

The Honorable Richard A. Jones
United States District Judge

ORDER – 16